Appeal No. 20-6060

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

JOHN TOMPKINS, M.D.,

        Appellant

v.

1. UNITED STATES DEPARTMENT OF VETERANS AFFAIRS,

2. ROBERT WILKIE, in his Official Capacity,

3. RALPH T. GIGLIOTTI, in his Official Capacity, and,

4. KRISTOPHER WADE VLOSICH, in his Official Capacity.

        Appellees.

**In accordance with 10TH CIR. R. 28.2(C)(2), Appellant does request oral argument.**

---

## OPENING BRIEF OF APPELLANT JOHN TOMPKINS, M.D.

---

Appeal from the United States District Court
for the Western District of Oklahoma
Honorable Bernard Jones, District Judge
Case No. 18-CIV-1251-J

---

Danny K. Shadid, OBA No. 8104
Of Counsel with Riggs Abney Neal Turpen Orbison & Lewis Law Firm
528 NW 12th Street, Oklahoma City, Oklahoma 73103
Telephone: (405) 843-9909; Facsimile: (405) 842-2913
dshadid@riggsabney.com
*Attorneys for Appellant John Tompkins, M.D.*
– August 23, 2020 –

Appeal No. 20-6060

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

JOHN TOMPKINS, M.D.,

       Appellant

v.

1. UNITED STATES DEPARTMENT
OF VETERANS AFFAIRS,

2. ROBERT WILKIE, in his Official Capacity,

3. RALPH T. GIGLIOTTI, in his Official
Capacity, and,

4. KRISTOPHER WADE VLOSICH, in his
Official Capacity.

       Appellees.

**In accordance with 10TH CIR.
R. 28.2(C)(2), Appellant does
request oral argument.**

## OPENING BRIEF OF APPELLANT JOHN TOMPKINS, M.D.

Appeal from the United States District Court
for the Western District of Oklahoma
Honorable Bernard Jones, District Judge
Case No. 18-CIV-1251-J

Danny K. Shadid, OBA No. 8104
Of Counsel with Riggs Abney Neal Turpen Orbison & Lewis Law Firm
528 NW 12th Street, Oklahoma City, Oklahoma 73103
Telephone: (405) 843-9909; Facsimile: (405) 842-2913
dshadid@riggsabney.com
*Attorneys for Appellant John Tompkins, M.D.*
– August 23, 2020 –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iv

GLOSSARY ....................................................................................................... vii

JURISDICTIONAL STATEMENT ....................................................................... ix

PRIOR OR RELATED APPEALS ..................................................................... viii

OPENING BRIEF FOR APPELLANT JOHN TOMPKINS, M.D. .................... 1

I. STATEMENT OF THE ISSUES ......................................................................... 1

II.     STATEMENT OF THE CASE ......................................................................... 2

    A.     FACTS RELEVANT TO THE ISSUES ......................................... 2

    B.     PROCEDURAL HISTORY ............................................................. 4

III. SUMMARY OF THE ARGUMENT .................................................................. 9

IV. ARGUMENTS AND AUTHORITIES ............................................................. 11

STANDARD OF REVIEW ................................................................................. 11

PROPOSITION I

    THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT 38
    U.S.C. §§7462 and 7463 AUTOMATICALLY OR IMPLIEDLY
    PROHIBITED THE COURT FROM GRANTING DR. TOMPKINS'
    JUDICIAL REVIEW OF MR. GIGLIOTTI'S DECISION LETTER
    AND/OR REVIEW OF THE OVERALL TERMINATION
    PROCEEDINGS, ESPECIALLY IN LIGHT OF THE GRIEVANCE
    EXAMINER'S FINDINGS AND RECOMMENDATIONS IN FAVOR OF
    REINSTATEMENT OF DR. TOMPKINS AND IN VIEW OF THE
    STRONG PRESUMPTION THAT CONGRESS INTENDS JUDICIAL
    R E V I E W     O F     A D M I N I S T R A T I V E
    ACTIONS ........................................................................................... 12

## PROPOSITION II

**TITLE 38 U.S.C. §§7461-7463, FACIALLY AND/OR AS APPLIED IN THE PRESENT CASE, ARE VIOLATIVE OF DR. TOMPKINS' RIGHTS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARE ALSO VIOLATIVE OF DR. TOMPKINS' FIFTH AMENDMENT RIGHTS TO BE FREE FROM UNEQUAL TREATMENT UNDER LAW.** ............................................20

A.   Mr. Gigloitti's Refusal and Failure to Follow the Express VA Procedures in Rejecting the Recommendations of the Grievance Examiner Constitutes a Deprivation of Dr. Tompkins' Procedural and/or Substantive Rights of Due Process under the Fifth Amendment to the United States Constitution. ............................22

B.   Title 38 U.S.C. §§7462 and 7463, Both Facially and as Applied in the Present Case, Are Violative of Dr. Tompkins' Right to Be Free from Disparate and Unequal Treatment as Guaranteed by the Fifth Amendment Due Process Clause. ...................................................27

**V. CONCLUSION** .................................................................................28

**ORAL ARGUMENT STATEMENT**.....................................................30

**CERTIFICATE OF SERVICE**.............................................................32

**CERTIFICATE OF COMPLIANCE**.....................................................33

**CERTIFICATE OF DIGITAL SUBMISSION
& PRIVACY REDACTIONS**..................................................................34

**CERTIFICATE OF IDENTICAL COPIES**...........................................35

**ATTACHMENT 1, District Court Order, Filed 04/03/2020**..............................36

**ATTACHMENT 2, District Court Judgment, Filed 04/30/2020**........................43

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Armour v. City of Indianapolis,*
  566 U.S. 673, 680 (2012)..............................................................**28**

*Bonner v. Dep't of Veterans Affairs Pittsburgh Healthcare Sys.,*
  477 F.3d 1343, 1345 (Fed. Cir. 2007)...........................................**14**

*Bosco v. United States,*
  931 F.2d 879,883 n. 3 (Fed.Cir.1991)............................................**30**

*Bowen v. Michigan Academy of Family Physicians,*
  476 U.S. 667, 970 (1986)..............................................**16, 17**

*City of Albuquerque v. United States Dept of the Interior,*
  379 F.3d 901, 906 (10th Cir. 2004)................................................**12**

*Devon Energy Production Company, L.P. v. Mosaic Potash Caslsbad, Inc.,*
  693 F.3d 1195, 1201(10th Cir. 2012)..................................**11, 12**

*Fligel v. Samson,*
  440 F.3d 747,752 (6th Cir.2006)...................................................**14**

*Heller v. Doe,*
509 U.S. 312, 319-320 (1993).........................................................**28**

*Kansas v. SourceAmerica,*
  874 F.3d 1226, 1240 (10th Cir. 2017).............................................**12**

*Kansas ex rel. Schmidt v. Zinke,*
  861 F.3d 1024, 1028 (10th Cir. 2017)...................**15, 16, 17, 31**

*Lewis v. Jeffers,*
  497 U.S. 764, 780 (1990)................................................................**23**

*Mills v. Garcia,*
  650 Fed. Appx. 873, 878-880 (5th Cir. 2016)................................**27**

*Pathak v. Dep't of Veterans Affairs,*
  274 F.3d 28, 32 (1st Cir. 20001)................................**19, 25, 30**

*Richmond v. Lewis,*
  506 U.S. 40 (1992)..............................................................**23, 27**

*Salizar v. King,*
  822 F.3d 61 (2nd Cir. 2016)..............................**18,19, 23, 27**

*United States v. Fausto,*
  484 U.S. 439 (1988)......................................................................**14, 30**

*United States v. Fillman,*
  162 F.3d 1055,1056 (10th Cir. 1998).........................................**12**

*United States v. Windsor,*
*570 U.S. 744, 774 (2013)*.............................................................**27**

*Weber v. Dep't. of Veterans Affairs,*
  521 F.3d 1061,1067 (9th Cir. 2008)............................................**14**

*Webster v. Doe,*
*486 U.S. 592 (1988)*...................................................................**19, 20**

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. V.........................................................**1, 2, 11, 27**

U.S. Const. amend. XIV............................................................**2, 27**

## STATUTES

5 U.S.C. §§ 701.................................................................................**15**

5 U.S.C. §702..........................................................................**ix,14,15**

5 U.S.C. §703.........................................................................**ix,14, 15**

5 U.S.C. §704........................................................................**ix, 14, 15**

5 U.S.C. §705..........................................................................**ix,14, 15**

5 U.S.C. §706.......................................................................**ix, 14, 15**

25 U.S.C. §2414.............................................................................**16**

28 U.S.C. §1291 ...........................................................................**ix**

28 U.S.C. §1294............................................................................**ix**

28 U.S.C. §1331 ...........................................................................**ix**

28 U.S.C. §1651............................................................................**15**

38 U.S.C. §7461.................................................**1, 2, 10, 11, 12, 14, 15, 18, 28, 29, 30**

38 U.S.C. §7461(b)...............................................................................................**13**

38 U.S.C. §7461(c)(3)...........................................................................................**13**

38 U.S.C. §7462.................................................**1, 2, 10, 11, 13, 14, 15, 27, 28, 29, 30**

38 U.S.C. §7462(d)..............................................................................................**13**

38 U.S.C. §7463.................................................**1,2, 10, 11, 13, 14, 15, 19, 28, 29, 30**

## COURT RULES

10TH CIR. R. 28.......................................................................................**1**

10TH CIR. R. 28.2(C)(2)........................................................................**30**

10TH CIR. R. 28.2(C)(3).......................................................................**viii**

FED. R. CIV. P. 12(b)(1)....................................................................**ix, 11**

FED. R. APP. P. Rule 28........................................................................**1**

FED. R. APP. P. 32(a)(5)......................................................................**33**

FED. R. APP. P. 32(a)(6)......................................................................**33**

FED. R. APP. P. 32(a)(7)(B)..................................................................**33**

FED. R. APP. P. 32(a)(7)(B)(I)..............................................................**33**

## OTHER AUTHORITIES

VA Handbook 5021/21,Part IV Chapter3, Paragraph 13(b)......................**7, 22, 23**

## **GLOSSARY**

APA............... "Administrative Procedures Act"

CRSA............ "Civil Service Reform Act"

DAB.............. "Disciplinary Appeals Board"

NIGC............. "National Indian Gaming Commission"

OIG ............... "Office of Inspector General"

VA...................."Department of Veterans Affairs"

VISN ............. "Veterans Integrated Service Network"

## **PRIOR OR RELATED APPEALS**

Pursuant to 10TH CIR. R. 28.2(C)(3), appellant John Tompkins, M.D., states that there exists no prior or related appeals, and that this is the first appeal in this matter.

## JURISDICTIONAL STATEMENT

Subject matter jurisdiction in the District Court was predicated upon the Court's federal question jurisdiction under 28 U.S.C. §1331, which pertained to questions of denial of procedural and substantive due process in violation of the Fifth Amendment to the United States Constitution and upon 5 U.S.C. §§702-706, pertaining to the Court's authority to grant injunctive relief against federal officials or federal agencies upon review of administrative decisions. The District Court had in personam jurisdiction over the parties in that all of the parties either resided within and/or conducted the business of the VA within the Western District of Oklahoma. The District Court granted the appellees' Motions to Dismiss for lack of subject matter jurisdiction under Fed R.Civ.P. 12(b)(1). The Court of Appeals is granted jurisdiction to hear appeals taken from final orders of a District Court pursuant to 28 U.S.C. §1291. The Court of Appeals for the Tenth Circuit is granted more specific jurisdiction to hear appeals emanating from final orders of the United States District Court for the Western District of Oklahoma. 28 U.S.C. §1294.

The District Court entered its Order dismissing Dr. Tompkins' Amended Complaint and its corresponding Judgment on April 3, 2020. (Appt. App. 175-181 and 182). Dr. Tompkins timely filed his Notice of Appeal on April 30, 2020 (Appt. App. 183-184), invoking this Court's appellate jurisdiction.

ix

<u>**OPENING BRIEF FOR APPELLANT JOHN TOMPKINS, M.D.**</u>

In accordance with FED.R.APP.P. 28 & 10TH CIR.R. 28, plaintiff-appellant,

John Tompkins, M.D. ("Dr. Tompkins"), respectfully submits this Opening Brief.

## I. STATEMENT OF THE ISSUES

The following issues are presented for review to the Court:

1.  Whether 38 U.S.C. §§7461-7463 prohibit judicial review of an administrative order terminating the employment of a full-time physician, *i.e.*, Dr. Tompkins, based upon alleged administrative deficiencies?

2.  Whether Mr. Gigloitti's refusal and failure to follow the express VA procedures in rejecting the recommendations of the Grievance Examiner to fully reinstate Dr. Tompkins constitutes a deprivation of Dr. Tompkins' rights of procedural and/or substantive due process under the Fifth Amendment to the United States Constitution?

3.  Whether deprivation of continued governmental employment as a physician working for the VA for approximately 30 years gives rise to a colorable constitutional claim?

4.  Whether deprivation of continued governmental employment as a physician working for the VA for approximately 30 years, ***upon and after a Grievance Examiner finds in favor of the terminated employee***, gives rise to a colorable constitutional claim?

5.  Whether 38 U.S.C. §§7461-7463 are unconstitutional ***on the face of the statutes***, as being violative of Dr. Tompkins' rights of due process under the Fifth Amendment to the United States Constitution?

6.  Whether 38 U.S.C. §§7461-7463, *as applied to the facts of this case*, are violative of Dr. Tompkins' rights of due process under the Fifth Amendment to the United States Constitution?

7.  Whether 38 U.S.C. §§7461-7463, *on the face of the statutes*, violate Dr. Tompkins' rights of equal protection under the Fourteenth Amendment to the United States Constitution, as made applicable to the federal government through the Fifth Amendment Due Process Clause?

8.  Whether 38 U.S.C. §§7461-7463, *as applied to the facts of this case*, violate of Dr. Tompkins' rights of equal protection under the Fourteenth Amendment to the United States Constitution, as made applicable to the federal government through the Fifth Amendment Due Process Clause?

9.  Whether the District Court erred, as a matter of law, in failing to address Count II of the Amended Complaint dealing with the direct violations of constitutional rights, separate and apart from the question of subject-matter jurisdiction to review an administrative order pertaining to a Title 38 physician terminated for matters outside of professional competence?

10. Whether the trial court erred, as a matter of law, in failing to address the allegations that Mr. Vlosich and Mr. Gigliotti had, according to their own written statements, "agreed" with the preliminary Inspector General Report and refused to recuse themselves from the decision-making process when requested to do so prior to the either of them engaging in the formal decision-making process?

## II.    STATEMENT OF THE CASE

### A. FACTS RELEVANT TO THE ISSUES

This case arises from the termination of John Tompkins, M.D., from his position as an Orthopedic Surgeon at the Oklahoma City Veterans Administration

Center where he had been employed as an Orthopedic Surgeon for slightly over 30 years. Dr. Tompkins was initially employed as an Orthopedic Surgeon at the Oklahoma City VA Medical Center in 1987. In September, 2010, Dr. Tompkins was named Interim Chief of Surgery, a position he occupied until the "interim" status was removed and he was named Chief of Surgery in January, 2012. Dr. Tompkins remained in the position of Chief of Surgery until resigning the position in September, 2016, effective mid-October, 2016.

In approximately May, 2016, appellee Vlosich was transferred from a Missouri VA facility and named as the "System Director" of the Oklahoma City VA Center. Shortly after his arrival, Mr. Vlosich systematically engaged in the wholesale firing of many long-time senior officials at the Oklahoma City VA Center.

During the Summer of 2017, while ostensibly invoking the "recommendation" of a new local Chief of Staff, Susan Bray-Hall, M.D., Mr. Vlosich summarily suspended Dr. Tompkins' privileges to perform knee and hip replacement procedures, claiming substandard medical care. (Appt. App. 42-43). Thereafter, three (3) independent Orthopedic Surgeons conducted a review of 50 of Dr. Tompkins' patient charts (*i.e.*, approximately 1/3 of the charts, each). All three (3) doctors reported that Dr. Tompkins' medical care was well within the accepted standard of care and was actually very good care. (Appt. App. 44-47). Based upon the reports of the three (3)

independent reviewers, Dr. Bray-Hall and Mr. Volisch had no choice but to reinstate Dr. Tompkins' full joint replacement privileges. (Appt. App. 48).

Within weeks thereafter, Mr. Volisch, via a letter from Dr Bray-Hall, sought to remove Dr. Tompkins for three (3) alleged deficiencies regarding ***administrative matters*** occurring approximately *1½ years earlier,* during the time that Dr. Tompkins was still Chief of Surgery at the Oklahoma City VA. (Appt. App. 49-52). The alleged administrative deficiencies were: (1) Allowing an attending physician to inappropriately document a patient's electronic record by accessing the record via a resident's credentials; (2) based upon reports ( none of which were confirmed by the OIG or other evidence), part-time and/or resident physicians may have received compensation in the "potential" amount of $3,303.00 while being absent from duty, *i.e.*, inaccurate time keeping; and (3) inadequate oversight of residents or inadequate documentation of the monitoring residents' supervision. These alleged administrative deficiencies were set forth in a letter of "Proposed Separation & Revocation of Clinical Privileges," dated October 30, 2017, executed by the then recently-hired new Chief of Staff, Susan Bray-Hall, M.D. (Appt. App.49-52).

## B. PROCEDURAL HISTORY

Following receipt of the letter of Proposed Separation, Dr. Tompkins, through undersigned counsel and personally, submitted two (2) seperate written responses,

both dated November 14, 2017, addressed to the Oklahoma City VA System Director,
Mr. Vlosich, in response the letter of Proposed Separation. (Appt. App. 53-58, 59-
62.) Additionally, undersigned counsel hand-delivered correspondence to Mr. Vlosich
on November 20, 2017, pointing out that Mr. Vlosich had written in a Memo dated
August 17, 2017, that he had previously reviewed the OIG draft report and had agreed
with its "findings" (the OIG never made any "findings" ). Undersigned counsel
objected to Mr. Vlosich acting as the decision-maker regarding the matters set forth
in the letter of Proposed Separation and requested that the matter be assigned to an
independent VA official, free of any connection with the underlying matter. (Appt.
App. 63 and 64). That same day, Mr. Vlosich sent a written reply communication
advising that he had denied the request for an independent VA official to be the
decision-maker regarding the proposed separation. (Appt. App. 65). On the next day,
November 21, 2017, Mr. Vlosich issued his decision letter terminating Dr. Tompkins
from employment with the VA, effective November 26, 2017. (Appt. App. 66-67).

Thereafter, undersigned counsel, on behalf of Dr. Tompkins, submitted a
written grievance to appellee Ralph Gigliotti who was the "Network Director" of
VISN 19, which included the Oklahoma City VA Health System. (Appt. App. 68-71).
Within the grievance letter, Dr. Tompkins requested a formal evidentiary hearing
pursuant to VA rules. *Id.* Within the same grievance letter, Dr. Tompkins noted that

Mr. Gigliotti had also written, on August 17, 2017, a memorandum advising that he had approved the OIG's draft report and had concurred in the OIG's "findings," which, as previously noted, did not exist. Dr. Tompkins requested that Mr. Gigliotti refer the matter to a grievance examiner outside of VISN 19 and that neither Mr. Gigliotti nor any of his subordinates be a decision-maker within the grievance process. (Appt. App. 68-71, at 96.) Mr. Gigliotti did not reply.

The grievance was assigned for evidentiary hearing to be conducted before Roger P. Tatum, M.D. , as Grievance Examiner. Dr Tatum was Chief of Surgery of the VA Puget Sound Health Care System (VISN 20) in Seattle, Washington. An extensive administrative evidentiary hearing was conducted before Dr. Tatum, over a period of three (3) days in May and June, 2018. Upon conclusion of the hearing, Dr. Tatum took the matter under advisement.

Thereafter, Dr. Tatum issued a detailed Report and Recommendation to Mr. Gigliotti as Network Director for the "VISN 19." (Appt. App. 73-78). In his Report and Recommendations to Mr. Gigliotti, Dr. Tatum found that, while some administrative deficiencies did exist, they were not worthy of terminating a practicing Orthopedic Surgeon from his position as a surgeon. (Appt. App. 73-78, at 78). Neither did he find the existence of any alleged "aggravating factors."*Id.* Dr. Tatum recommended full reinstatement of Dr. Tompkins. (Appt. App.73-78, at 78.)

Thereafter, in a manner contrary to the mandates of the applicable VA rules and regulations (Appt. App. 28-41), Mr. Gigliotti refused to follow the Grievance Examiner's recommendation of reinstatement. (Appt. App. 79-80). The applicable VA Rule provided that Mr. Gigliotti **must follow** the Grievance Examiner's recommendation unless he, Mr. Gigloitti, could articulate, in specific terms, how the Grievance Examiner's findings and recommendations were not supported by a preponderance of the evidence, or that his findings and recommendations were contrary to law, regulations or published VA policies. (Appt. App. 39, at ¶13(b)(1)). The applicable portions of the VA Handbook are found at VA Handbook 5021/21, Part IV, Chapter 3, Paragraph 13(b), which provides pertinent part:

> "(1) If the decision official modifies or rejects the examiners recommendation(s), the written decision will include a *specific statements* of the reasons for the modification or rejection. Modification or rejection of recommendations of the grievance examiner *will be limited* to the following grounds:
>
> (a)  The recommendation(s) are contrary to law, regulation, or published Department Policy: and/or
>
> (b)  The recommendation(s) are not supported by the preponderance of the evidence." (Emphasis added.) (Appt. App. 39).

Mr. Gigliotti refused to follow the Grievance Examiner's findings and recommendations and, at the same time, failed to state with any specificity how the

Grievance Examiner's findings and recommendations were not supported by the preponderance of the evidence or were contrary to law, regulation or published VA policies. (Appt. App. 79-80).

Thereafter, Dr. Tompkins initiated an action in the District Court seeking relief on two (2) bases. First, judicial review of Mr. Gigliotti's administrative decision letter wherein Dr. Tompkins sought reinstatement. Second, Dr. Tompkins alleged violations of his constitutional rights under the Fifth Amendment's Due Process Clause. Dr. Tompkins' claims in the District Court were ultimately presented within his Amended Complaint (Appt. App. 6-80 ). In responding to Dr. Tompkins' Amended Complaint, the VA filed a Motion to Dismiss alleging, for the first time in the case, a lack of subject matter jurisdiction. (Appt. App. 81-115 ). Dr. Tompkins sought and received leave to file a Response in excess of 25 pages (Appt. App. 116-117 and 118 ) to the Motion to Dismiss. Dr. Tompkins submitted his Response to the Motion to Dismiss (Appt. App. 124-153 ). Counsel for Dr. Tompkins submitted a Correction to Dr. Tompkins' Response pertaining to an erroneous quotation within the initial Response and provided a correction to the same (Appt. App. 154-157). Following submission of the appellees' joint Reply (Appt. App. 158-174), the District Court entered an Order dismissing the Amended Complaint (Appt. App. 175-181) and entered a corresponding Judgment (Appt. App. 182).

The District Court held that it did not have subject matter jurisdiction to conduct a judicial review of Mr. Gigloitti's decision letter rejecting the recommendation of the Grievance Examiner and terminating Dr. Tompkins. (Appt. App. 175-181). In so doing, the District Court also failed to address Count II of Dr. Tompkins' Amended Complaint addressing direct violations of constitutional rights of substantive and procedural due process. *Id.*

## III. SUMMARY OF THE ARGUMENT

Dr. Tompkins had been employed as an Orthopedic surgeon at the Oklahoma City VA Hospital for approximatey 30 years when, during the Summer of 2017, appellee Wade Vlosich, the newly installed System Director for the Oklahoma City VA Health System, began a targeted campaign to eliminate Dr. Tompkins from further VA employment. Mr. Volisch predetermined to terminate Dr. Tompkins long before the draft OIG report was published and long before the letter of Proposed Separation was issued. As such, Mr. Volisch could not be a fair and impartial decision-maker pertaining to the termination of Dr. Tompkins' employment. Similarly, appellee Ralph Gigliotti, Network Director for VISIN, 19 which included the Oklahoma City VA Health System, had approved the draft OIG report long before the termination of Dr. Tompkins and long before Mr. Gigliotti was to act as a decision-maker following the evidentiary administrative hearing. Mr. Violich and

Mr.. Gigliotti acting as decision-makers deprived Dr. Tompkins of a fair and impartial decision-makers in violation of the Fifth Amendment Due Process Clause.

Upon a full and complete evidentiary hearing, the Grievance Examiner Roger Tatum, M.D., issued a Report and Recommendation finding that the administrative deficiencies that were alleged to have occurred 1½ years prior to the termination of Dr. Tompkins did not rise to the level of a termination of employment and recommended that Dr. Tompkins be reinstated retroactively to the date of termination. Mr. Gigliotti as Network Director, refused to follow the Grievance Examiner's Report and Recommendations, and, in doing so, also failed to follow the VA's own procedural and substantive requirements. Specifically, Mr. Gigliotti did not provide any specific statements as to how the Grievance Examiner's report was contrary to law, regulations or published VA policies. Neither did he state or explain how the Grievance Examiner's Report and Recommendations were not supported by the preponderance of the evidence. As such, Dr. Tompkins was deprived of both procedural and substantive due process as guaranteed by the Fifth Amendment to the United States Constitution.

Title 38 U.S.C. §§7461-7463 are facially, and as applied in this case, unconstitutional in violation of Dr. Tompkins' Fifth Amendment rights of procedural and substantive due process, and also in violation of his Fifth Amendment right to be

free from unequal treatment of the law. In this regard, 38 U.S.C. §§7461-7463, can reasonably be interpreted to allow for judicial review of VA decisions pertaining to the termination of VA physicians who are alleged to be deficient in matters of non-professional conduct or competence as defined in 38 U.S.C. §7461, and such an interpretation and application should be followed.  However, if 38 U.S.C. §§7461-7463 are interpreted and applied so as to deny judicial review of terminations of employment of VA physicians whose conduct at issue is not that of professional conduct or competence, then those statutes result in deprivations of procedural and substantive due process, as well as deprivations of the protections against unequal treatment of the law as also guaranteed by the Fifth Amendment Due Process Clause.

Governmental agencies are bound to follow their own rules and failure to do so constitutes a deprivation of procedural and substantive due process as guaranteed by the Fifth Amendment.

## IV. ARGUMENTS AND AUTHORITIES

### STANDARD OF REVIEW

On appeal from a District Court Order dismissing a Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the Court of Appeals reviews the question of dismissal for lack of subject matter jurisdiction *de novo*. *Devon Energy Production Company, L.P. v. Mosaic Potash Caslsbad, Inc.*, 693 F.3d

1195, 1201(10th Cir. 2012); *Kansas v. SourceAmerica*, 874 F.3d 1226, 1240 (10ᵗʰ Cir. 2017). In so doing, on a facial attack regarding the sufficiency of the allegations as to subject matter jurisdiction set forth within the Amended Complaint, as in the present case, the Court must accept as true all facts pled within the Amended Complaint. *City of Albuquerque v. United States Dept of the Interior*, 379 F.3d 901, 906 (10ᵗʰ Cir. 2004). Additionally, the Court of Appeals reviews, *de novo*, the District Court's interpretation of federal statutes. *United States v. Fillman*, 162 F.3d 1055, 1056 (10ᵗʰ Cir. 1998).

## PROPOSITION I:

**THE DISTRICT COURT ERRED IN ITS DETERMINATION THAT 38 U.S.C. §§7462 and 7463 AUTOMATICALLY OR IMPLIEDLY PROHIBITED THE COURT FROM GRANTING DR. TOMPKINS' JUDICIAL REVIEW OF MR. GIGLIOTTI'S DECISION LETTER AND/OR REVIEW OF THE OVERALL TERMINATION PROCEEDINGS, ESPECIALLY IN LIGHT OF THE GRIEVANCE EXAMINER'S FINDINGS AND RECOMMENDATIONS IN FAVOR OF REINSTATEMENT OF DR. TOMPKINS AND IN VIEW OF THE STRONG PRESUMPTION THAT CONGRESS INTENDS JUDICIAL REVIEW OF ADMINISTRATIVE ACTIONS.**

This Court has never addressed the reviewability of adverse decisions affecting or terminating the employment of VA physicians who are terminated for alleged administrative deficiencies. The backdrop of the classifications involved and the classifications which are allowed judicial review is set forth in 38 U.S.C. §§7461-

7463. VA Physicians who are disciplined or terminated for matters relating to "their professional conduct or competence" are allowed administrative hearings before the VA's Disciplinary Appeals Board ("DAB"). 38 U.S.C. §7461(b). "Professional conduct or competence" deals solely with the physician's direct patient care or clinical competence 38 U.S.C. §7461(c)(3). Any decision of the DAB is then reviewable by the Secretary of the VA. 38 U.S.C. §7462(d). An adverse decision by the Secretary is then subject to judicial review. 38 U.S.C. §7462(f). All adverse employment actions involving VA physicians, which do not involve questions of professional conduct or competence, do not go through the DAB. 38 U.S.C. §7463. Section 7463 is silent regarding the subject of judicial review. *Id.*

The Court of Appeals for the Tenth Circuit has never addressed the statutory interpretations of 38 U.S.C. §§7462 and 7463, in so far as the availability of judicial review of termination of VA physicians for reasons other than professional conduct or competence is concerned. The District Court, in the present case, likewise found no Tenth Circuit authorities addressing the question of whether a VA physician, who is terminated for matters not involving professional conduct or competence and, thus, not having access to review by the DAB, can be afforded judicial review or whether 38 U.S.C. §7463 precludes the opportunity judicial review. (Appt. App. 175-181, at 178).

For purposes of addressing the appellees' Motion to Dismiss, the District Court correctly accepted the facts pled within the Amended Complaint. (Appt. App. 175-181, at 176). The facts pled within the Amended Compliant included the allegation that, "at all pertinent times, Dr. Tompkins possessed and had a reasonable expectation of continued employment as an Orthopedic Surgeon working for the VA." (Appt. App. at 10, ¶17). Dr. Tompkins' reasonable expectation of continued employment was, thus, admitted for purposes of ruling on the appellee's Motion to Dismiss. The District Court also correctly recognized that the holding in *United States v. Fausto*, 484 U.S. 439 (1988), pertaining to the exclusion of judicial review under the Civil Service Reform Act, was superceded by amendments to the CRSA (Appt. App. 175-181 at 179).

The District Court held that 38 U.S.C. §§7461-7463 negated the waiver of sovereign immunity set forth in the the Administrative Procedures Act, ("APA"), 5 U.S.C. §§701-706, and, therefore, prohibited judicial review of Dr. Tompkins' termination. The District Court followed the application of Section 7463 put forth by the Sixth Circuit in *Fligel v. Samson*, 440 F.3d 747, 752 (6th Cir., 2006), the Ninth Circuit in *Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008), and the Federal Circuit in *Bonner v. Dep't of Veterans Affairs Pittsburgh Healthcare Sys.*, 477 F.3d 1343, 1345 (Fed. Cir. 2007). The courts in those cases held that

judicial review of VA physicians adversely affected or terminated for matters not

reviewable by the DAB was not available due Congress' silence on the subject within

Section 7463. In following the path of those courts, the District Court failed to

consider that the primary relief sought was not monetary damages, but rather

injunctive relief. If, assuming *arguendo*, 38 U.S.C. §§7461-7463 negates the waiver

of "sovereign immunity" contemplated within 5 U.S.C. §§701-706, it does not affect

the Court's jurisdiction to issue mandatory injunctive relief to compel an inferior

tribunal to comply with the law. *See, e.g.*, 28 U.S.C. §1651, granting the District

Courts authority to issue writs to inferior tribunals.

Further, in following the paths of the courts in *Fligel*, *Weber and Bonner*, the

District Court, in the present case, failed to consider this Court's own decisions

holding that exclusion of language does not necessarily constitute a prohibition of any

particular judicial action. In this regard, the District Court cited *Kansas ex rel.

Schmidt v. Zinke*, 861 F.3d 1024, 1028 (10th Cir. 2017), to highlight this Court's

affirmance of a District Court's dismissal of an APA claim for lack of subject matter

jurisdiction. In that case, it was found that " an agency letter" did not constitute a final

decision of the agency, and, therefore, judicial review was not available. (Appt. App.

175-181, at 179). However, with all due respect, the District Court did not fully

discuss this Court's holding in *Schmidt*.

In *Schmidt*, the pertinent statute provided for judicial review of specific actions of the National Indian Gaming Commission. There, a single statute, *i.e.*, 25 U.S.C. §2414, specifically provided for judicial review of "decisions made by the Commission" pursuant to four (4) other specific statutes dealing with tribal gaming ordinances, management contracts, existing ordinances and contracts, and civil penalties or closures for violations of the Indian Gaming Regulatory Act, regulations or tribal ordinances. 861 F.3d at 1029. In *Schmidt*, the issue was whether an ***opinion letter*** of the Commission's general counsel constituted a final agency action which was reviewable under 25 U.S.C. §2714. In *Schmidt*, the District Court held that an opinion letter of counsel was not a final agency action as defined in 25 U.S.C. §2714.There, the Court of Appeals for the Tenth Circuit expressly recognized the omission of language does not necessarily equate to exclusion of judicial review. In *Schmidt*, the Court said:

> "We acknowledge that § 2714's ***omission of opinion letters is not by itself conclusive***. See *Hamilton Stores, Inc. v. Hodel, 925 F.2d 1272, 1277 (10th Cir. 1991)* ("[T]he mere fact that some acts are made reviewable by the express language of the relevant statute or statutes ***should not suffice to support an implication of exclusion as to others***." (brackets omitted) (quoting *Bowen,* 476 U.S. at 674))." (Emphasis added.) *Kansas ex rel. Schmidt v. Zinke*, 861 F.3d at 1029-1030, *citing Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986)**.**

Having noted that exclusion of express language granting judicial review in some statutes "should not suffice to support an implication of exclusion as to others," this Court, in *Schmidt*, concluded that an attorney letter did not constitute a final action of the Commission. *Schmidt*, 861 F.3d at 1030.

It is also important to note that this Court acknowledged, in *Schmidt*, that there is a "***strong presumption that Congress intends judicial review of administrative action***." (Emphasis added). *Schmidt*, 861 F.3d at 1028-1029, *citing Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986). This Court also noted that the strong presumption could be overcome by "***specific*** congressional intent, (emphasis added)," which is "fairly discernable." 861 F.3d at 1029, *quoting Bowen*, 476 U.S. at 673. As stated, the Court in *Schmidt* had little trouble finding it "fairly discernable" that Congress did not intend for an attorney's opinion letter to be a final agency action.

In the present case, however, an attorney letter is not at issue. Rather, the affirmative findings and recommendations of a Grievance Examiner, who heard all of the evidence and whose decision was affirmatively rejected, without specific articulation as required by the applicable VA rules, is being allowed to go by the wayside via the unfettered action of the VISN Network Director, Mr. Gigliotti,

without any judicial recourse. Such can not be a legitimate purpose or intent of Congress.

It makes no sense, and actually leads to an absurd or unreasonable result, to think that Congress intended the courts to review *medical decisions* of the DAB and not non-medical decisions of the agency. It would seem beyond doubt that the DAB, composed primarily of physicians, is best to handle matters dealing with a physician's professional conduct or competence, as that phrase is defined in 38 U.S.C. §7461, without the judicial review that *is provided*. But, yet, judicial review is provided to examine the DAB's findings and actions regarding a physician's medical conduct or competence. On the other hand, it makes no sense for the courts to review medical-related decisions, for which the courts have no actual training, while disallowing judicial review of adverse employment actions, for which the courts actually do possess more training and experience.

The Court of Appeals for the Second Circuit has recently held similarly. In *Salizar v. King*, 822 F.3d 61 (2nd Cir. 2016), the Court of Appeals stressed the strong presumption in favor of judicial review of administrative agency actions and also stressed that the agency bore the "heavy burden" of overcoming the strong presumption favoring judicial review. In that case, the Court had before it actions taken by the United States Department of Education. The Department argued that

judicial review was not available because the agency's actions were within the scope of the agency's discretion under law. The Court of Appeals for Second Circuit rejected that argument, holding, *inter alia*, that statutes, along with the agency's internal regulations and internal "Dear Colleague Letters," provided "sufficient law" to permit judicial review of the plaintiffs' claims in that case. *Salizar*, 822 F.3d at 76-77. The Court in *Salizar* said:

> "There is a ***strong presumption favoring judicial review*** of administrative action. *Mach Mining, LLC v. EEOC, 135 S. Ct. 1645, 1651, 191 L. Ed. 2d 607 (2015); Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349, 104 S. Ct. 2450, 81 L. Ed. 2d 270 (1984).* 'From the beginning our cases have established that judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress.' *Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 670, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986)* (internal alteration and quotation marks omitted). In the absence of an express statutory prohibition, ***the agency*** 'bears the ***heavy burden*** of ***overcoming the strong presumption*** that Congress did not mean to prohibit all judicial review of [its] decision.' *Dunlop v. Bachowski, 421 U.S. 560, 567, 95 S. Ct. 1851, 44 L. Ed. 2d 377 (1975)*." (Emphasis added.)

The Court of Appeals for the First Circuit has also recognized that where there exists a colorable constitutional claim, the "court might have jurisdiction notwithstanding the statutory bars discussed above, (*i.e.*, 38 U.S.C. §7463) . . . ." *Pathak v. Dep't of Veterans Affairs*, 274 F.3d 28, 33 (1st Cir. 2001), *citing Webster v. Doe*,

486 U.S. 592 (1988). In the present case, the District Court, as more fully discussed below, did not even address Dr. Tompkin's constitutional claims.

In the present case, the District Court did not even allow the case to proceed to discovery, where the VA would be forced to address the burden of overcoming the strong presumption favoring judicial review, as well as the presumption that Congress did not intend to prohibit judicial review of decisions involving a physician's non-medical conduct. The VA would be forced to address not only the question of why judicial review is not allowed, but also the questions as to why Mr. Gigliotii did not articulate if and how the Grievance Examiner's Report and Recommendations were contrary to law, regulation, or published Department Policy; and/or were not supported by the preponderance of the evidence. It was the VA's heavy burden to bear.

## PROPOSITION II

**TITLE 38 U.S.C. §§7461-7463, FACIALLY AND/OR AS APPLIED IN THE PRESENT CASE, ARE VIOLATIVE OF DR. TOMPKINS' RIGHTS OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARE ALSO VIOLATIVE OF DR. TOMPKINS' FIFTH AMENDMENT RIGHTS TO BE FREE FROM UNEQUAL TREATMENT UNDER LAW.**

In Count II of the Amended Complaint, Dr, Tompkins submitted claims for

separate and independent violations of procedural and substantive due process as

guaranteed by the Fifth Amendment to the United States Constitution (Appt. App. 22-

26). Among the constitutional violations claimed were the fact that Mr. Volisch had

prejudged the matter and had predetermined to terminate Dr. Tompkins.  It was

submitted that Mr. Vlosich should not have been in the position of a decision-maker

after having previously reviewed and approved the draft OIG report and after having

entered into a series of discussions and events pertaining to the termination of Dr.

Tompkins' employment, which actually included interviewing a successor for Dr.

Tompkins many weeks before the letter of Proposed Separation was sent to Dr.

Tompkins.  In this regard, Dr. Tompkins was not making a claim that Mr. Vlosich

could not occupy the roles of investigator and decision-maker. The claim was that Mr.

Vlosich had already prejudged the matter and had arrived at a decision to terminate

Dr. Tompkins long before the letter of Proposed Separation came into existence, and,

thus, Dr. Tompkins was deprived of a fair and impartial decision-maker.

Constitutional deprivations submitted in Count II of the Amended Complaint

also addressed the impropriety of Mr. Gigliotti acting as a decision-maker when he,

too, had previously approved the OIG draft report. The constitutional deprivations

likewise included the appellees' failures to abide by their own mandatory procedural

and substantive requirements set forth in the VA Handbook. (Appt. App. 22-26). The

District Court did not address these independent constitutional claims. (Appt. App.

175-181).

### A. Mr. Gigloitti's Refusal and Failure to Follow the Express VA Procedures in Rejecting the Recommendations of the Grievance Examiner Constitutes a Deprivation of Dr. Tompkins' Procedural and/or Substantive Rights of Due Process under the Fifth Amendment to the United States Constitution.

The portion of the VA Handbook dealing with a decision official's rejection

of a Grievance Examiner's Report and Recommendations is set forth in the VA

Handbook, Part IV, Chapter 3, Paragraph 13(b), which provides, in pertinent part, as

follows:

> "b. <u>Action by Decision Official - Examiner's Report</u>. Upon receipt of the grievance examiner's report of findings and recommendations, the decision official will accept, modify, or reject the examiner's recommendation(s) and issue a written decision to the employee within 15 days after the recommendation is received. The employee's representative will also receive a copy of the decision.
>
> (1)    If the decision official modifies or rejects the examiners recommendation(s), the written decision will include a *specific statements* of the reasons for the modification or rejection. Modification or rejection of recommendations of the grievance examiner *will be limited* to the following grounds:
>
> (a)    The recommendation(s) are contrary to law, regulation, or published Department Policy: and/or
>
> (b)    The recommendation(s) are not supported by the

preponderance of the evidence." (Emphasis added.) (Appt.
App. 38-39)."

It is incumbent upon governmental agencies to follow their own rules and

regulations. *Salazar v. King*, 822 F.3d at 76. *Accord*, *Richmond v. Lewis*, 506 U.S.

40, 50 (1992) (where the Court held that a state court's failure to follow State-

imposed guidelines in reviewing a death sentence could rise to the level of being "so

arbitrary and capricious as to constitute *an independent* due process . . . violation."

(Emphasis added.) *Richmond*, 506 U.S. at 50, *quoting Lewis v. Jeffers*, 497 U.S. 764,

780 (1990).

In the present case, the VA Handbook provided an express mandate that the

Report and Recommendations of the Grievance Examiner be followed unless the

decision-maker, Mr. Gigliotti, provided "a specific statement of the reason(s) for the

modification or rejection," and that the reason(s) are limited to (1) the Grievance

Examiner's recommendations being contrary to law, regulation or published

Department policy, and/or (2) that the recommendations were not supported by a

preponderance of the evidence. (Appt. App. 39). In his decision letter, Mr. Gigliotti

did none of the above. He made no statement as to the Grievance Examiner's

recommendations being contrary to law, regulation or published Department policy.

(Appt. App. 79-80). Neither did he make any statement that the Grievance Examiner's

recommendations were not supported by the preponderance of the evidence. (Appt. App. 79-80). Even had he included any of these general statements, he did not include any "specific statement" explaining how or why the Grievance Examiner's recommendations were contrary to law, regulation or published Department policy, or were not supported by the preponderance by the evidence. *Id.*

Importantly, Mr. Gigliotti, in his decision letter, made a blatantly false statement which he attributed to the Grievance Examiner, as follows: "He found the offense was serious enough in nature, [sic] to rise of the level of discharge given Dr. Tompkins' assignment as Chief of Surgery." (Appt. App. 79, ¶6). The Grievance Examiner made no such finding or similar statement. In his findings, the Grievance Examiner said that the area of concerns "could be used to justify requiring a Chief of Service to relinquish that position [*i.e.*, relinquish the position of a chief of service, not discharge from employment] . . . ." (Appt. App. 77) However, to the direct contrary of Mr. Gigliotti's attribution to the Grievance Examiner, the Grievance Examiner actually stated:

> "Terminating his employment as a staff physician for the causes specified in the removal letter is not appropriate and is highly inconsistent with any connection to his duties at the time of his termination." (Appt. App. 78)

Unfortunately, under the District Court's application of 38 U.S.C. §§7461-

7463, the falsity of Mr. Gigliotti's statement and the arbitrariness and capriciousness of his decision cannot be properly explored and fully revealed. As such, Mr. Gigliotti's unfettered actions go without the check of judicial review and without the justice that only judicial review can provide.

In *Pathak v. Dept. of Veterans Affairs*, 274 F.3d 28, 34 (1st Cir. 2001), the Court of Appeals for the First Circuit recognized that a colorable constitutional claim could give rise to judicial review of the VA's agency action against an employee. *Pathak*, 274 F.3d at 31, 33. However, in *Pathak*, the Court easily found that the employee's claims did not rise to the level of a colorable constitutional claim. In that case, the physician employee was ultimately given a seven (7) day suspension for what was undisputedly sexual harassment perpetrated by the employee upon a female co-worker. In that case, it was noted that a jury in a parallel case awarded the co-worker $375,000.00 against the VA Hospital arising out of the physician employee's harassment, and that the co-worker was awarded another verdict against the physician employee in a separate suit for assault. Unlike the present case, the Grievance Examiner in *Pathak* found that, without question, the sexual harassment did occur, whereas, here, the Grievance Examiner found in favor of Dr. Tompkins. The claims in *Pathak* were not colorable constitutional claims. That cannot be said of Dr. Tompkins' claims.

Dr. Tompkins' claims of being deprived procedural due process, and substantive due process with regard to Mr. Gigliotti's failure to adhere to the VA's own procedural and substantive requirements, are not trivial. This is especially so given the fact that the Grievance Examiner found in favor of Dr. Tompkins and recommended full reinstatement. There can hardly be a more colorable constitutional claim when a complete evidentiary hearing has been conducted, when the Grievance Examiner has taken in all the evidence and made findings and recommendations upon such evidence, when Dr. Tompkins has expended substantial time, money and effort in pursuing the ultimate findings of the Grievance Examiner, and when the entire process is held for naught at the unfettered whim of Mr. Gigliotti.

The question must be asked, why go through an extensive evidentiary hearing if the hearing has no ultimate meaning? That hearing took substantial time of the Grievance Examiner, the parties, the witnesses, the attorneys, and technical/support staff in four (4) cities across the country. Then, without following the Report and Recommendation of the Grievance Examiner, Mr. Gigliotti is allowed to throw away all of that process without following the VA's own mandatory provisions. That in and of itself exemplifies the existence of a colorable constitutional claim as well as the corresponding deprivation of the procedural and substantive due process rights associated with that colorable claim and which had been denied.

Mr. Gigliotti's rejection of the Grievance Examiner's Report and Recommendations was without foundation and was, in the classic since, arbitrary and capricious, thus denying Dr. Tompkins his Fifth Amendment right to substantive due process. U.S. Const. amend. V; *Richmond v. Lewis*, 506 U.S. 40, 50 (1992); *Salizar v. King*, 822 F.3d 61 (2nd Cir. 2016); *Mills v. Garcia*, 650 Fed. Appx. 873, 878-880 (5th Cir. 2016).

### B. Title 38 U.S.C. §§7462 and 7463, Both Facially and as Applied in the Present Case, Are Violative of Dr. Tompkins' Right to Be Free from Disparate and Unequal Treatment as Guaranteed by the Fifth Amendment Due Process Clause.

It is long been held that the Fifth Amendment Due Process Clause protects against denial of equal protection of the law, incorporating the protections of the Fourteenth Amendment Equal Protection Clause. *United States v. Windsor,* 570 U.S. 744, 774 (2013). In the present case, there exists a class of VA physicians, facing discipline related to their professional conduct or competence, who are allowed administrative review by a board consisting primarily of physicians and then a judicial review. 38 U.S.C. §7462. Then there is a class of VA physicians facing discipline related to non-professional conduct, as that phrase is defined in 38 U.S.C. 7461, who are allowed an administrative hearing before a Grievance Examiner, but no judicial review. In order to justify the disparate treatment between these two (2)

classes of VA physicians, there must exist some rational basis for the different treatment. *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) and *Heller v. Doe*, 509 U.S. 312, 319-320 (1993). Research thus far revels no judicial discussion as to any rationale for the disparate treatment of these classes of VA physicians.

As noted above, it makes no sense and there is no rational basis to allow judicial review of medical issues which have already been reviewed by a panel of physicians, while denying judicial review of matters which do not include medical conduct or competence. In this regard, Dr. Tompkins hereby adopts and incorporates herein by reference all of his arguments and authorities set forth in Proposition I, above.

## V. CONCLUSION

Dr. Tompkins asks the Court to rule that 38 U.S.C. §§7461-7463 can be interpreted and applied such that judicial review of Mr. Gigliotti's decision letter is available in the present case even without the existence of a colorable constitutional claim. However, Dr. Tompkins submits that he does possess multiple colorable constitutional claims as discussed above and that, in light of such colorable constitutional claims, the Court rule that judicial review of the appellee's termination of his employment with the VA be available regardless of the possible, arguable limitations of 38 U.S.C. §§7461-7463. Further, Dr. Tompkins that the Court rule that

38 U.S.C. §§7461-7463 are facially, and/or as applied in the present case, unconstitutional as being violative his rights to procedural and substantive due process. Dr. Tompkins further requests that the Court rule that 38 U.S.C. §§7461-7463 unconstitutionally creates two (2) classes of VA physicians who are treated unequally without any rational basis for such unequal treatment, *i.e.*, those who are disciplined or terminated for matters involving professional conduct or competence being allowed judicial review, while those who are facing discipline for matters not involving professional conduct or competence (e.g., administrative deficiencies) not being allowed judicial review of the agency action.

Finally, Dr. Tompkins prays the Court reverse the ruling and Order of the District Court and remand this case with instructions to allow this case to proceed with judicial review under 38 U.S.C. §§7461-7463 on Count I of the Amended Complaint, to include mandatory injunctive relief to adhere to the Report and Recommendations of the Grievance Examiner, and with instructions to allow this case to proceed on Count II of the Amended Complaint regarding Dr. Tompkins' independent claims for violations of his constitutional rights.

## ORAL ARGUMENT STATEMENT

Pursuant to 10TH CIR. R. 28.2(C)(2), appellant, John Tompkins, M.D., states that he does request oral argument for this matter. Oral argument is requested because this is a case of first impression within this Circuit. This Court has never addressed the application of 38 U.S.C. §§7462 and 7463, which were enacted following the United States Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988), where the Court had addressed the subject of certain terminated VA employees being excluded from having their administrative cases judicially reviewed. Title 38 U.S.C. §§ 7461-7463, were presumably enacted, in part, in response to the *Fausto* case. *See Bosco v. United States*, 931 F.2d 879, 883 n.3 (Fed. Cir. 1991). To date, the Sixth Circuit, Ninth Circuit and Federal Circuit have applied Sections 7462 and 7463 in the manner applied by the District Court in the present case. As is noted by the United States Court of Appeals for the First Circuit in *Pathak v. Dept of Veterans Affairs*, 274 F.3d 28 (1st Cir. 2001), discussed hereinabove, there is not an express exclusion of judicial review set forth in 38 U.S.C. §7463 and, as that Court suggests, there is room for discussion of the possibility of judicial review of final agency decisions pertaining to a physician terminated by the VA for alleged administrative deficiencies, especially if there exists a colorable constitutional claim as Dr. Tompkins submits exists in the present case. Likewise, this Court has similarly

recognized that the express inclusion of language of judicial review in one statute

does "not suffice to support an implication of exclusion as to others.") *Kansas ex rel.*

*Schmidt v. Zinke*, 861 F.3d at 1029-1030.

Further, no case found thus far reveals any rationale for the disparate treatment

of the VA physicians facing different types of discipline.

Matters of this importance are worthy of oral argument.

Respectfully submitted,

<u>s/ Danny K. Shadid, OBA No. 8104</u>
Danny K. Shadid
Of Counsel
RIGGS, ABNEY, NEAL, TUPREN,
ORBISON & LEWIS LAW FIRM
528 NW 12th Street
Oklahoma City, OK 73103
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: dshadid@riggsabney.com
*Attorney for Appellant John Tompkins, M.D.*

## CERTIFICATE OF SERVICE

I, Danny K. Shadid, certify that on August 23, 2020, I electronically

transmitted this **OPENING BRIEF OF APPELLANT JOHN TOMPKINS, M.D.**

to the Clerk of the Court using the CM/ECF System for filing and transmittal of

Notice of Electronic Filing to the following ECF registrants:

Rebecca Frazier
United States Attorney's Office
E-mail: Rebecca.Frazier@usdoj.gov

Tom Majors
United States Attorney's Office
E-mail: Tom.Majors@usdoj.gov
*Attorneys for Appellees*

s/ Danny K. Shadid
Danny K. Shadid

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because:

__x___ this brief contains 6,610 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(i), or

_____ this brief uses a monospaced typeface and contains [state number of] lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(ii).


2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

_x___this brief has been prepared in a proportionally spaced typeface using Word Perfect 8 in 14-point Times New Roman font, or

_____this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].


                                        s/ Danny K. Shadid
Date: August 23, 2020                    Danny K. Shadid

## CERTIFICATE OF DIGITAL SUBMISSION & PRIVACY REDACTIONS

I, Danny K. Shadid, hereby certify that a copy of the above and foregoing

**OPENING BRIEF OF APPELLANT JOHN TOMPKINS, M.D.**, as submitted in

Digital Form via the court's ECF system, is an exact copy of the written document

filed with the Clerk and has been scanned for viruses with the most recent version of

a commercial virus scanning program, Symantec Endpoint Protection, August 23,

2020; and, according to the program, is free of viruses. In addition, I certify all

required privacy redactions have been made.

s/ Danny K. Shadid

Date: August 23, 2020              Danny K. Shadid

## <u>CERTIFICATE OF IDENTICAL COPIES</u>

I, Danny K. Shadid, hereby certify that all required copies of the above

**OPENING BRIEF OF APPELLANT JOHN TOMPKINS, M.D.,** submitted to the

Court are identical copies of the material submitted electronically.


Date: August 23, 2020

By: s/ Danny K. Shadid
Danny K. Shadid

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

JOHN TOMPKINS, M.D.,              )
                                  )
          Plaintiff,              )
                                  )
v.                                )          Case No. CIV-18-1251-J
                                  )
UNITED STATES DEPARTMENT OF       )
VETERANS AFFAIRS, et al.,         )
                                  )
          Defendants.             )

**ORDER**

Currently pending is Defendants' Motion to Dismiss Plaintiff's Amended Complaint with Brief in Support (Defs.' Mot.) [Doc. No. 28]. Plaintiff has responded (Pl.'s Resp.) [Doc. No. 34] and Defendants have replied [Doc. No. 38]. For the reasons discussed below, the Court GRANTS the motion, and DISMISSES Plaintiff's claims without prejudice.

**I.    Background**

As stated in the Amended Complaint (Amend. Compl.) [Doc. No. 24], Plaintiff was a physician with the United States Department of Veterans Affairs (VA) and was involuntarily discharged on November 21, 2017 for "alleged administrative deficiencies occurring in 2015-2016." Amend. Compl. at 4-6. Plaintiff seeks judicial review under 5 U.S.C. §§ 702-706 (the Administrative Procedures Act (APA)) arguing his rights "under the due process clause of the Fifth Amendment to the United States Constitution" and "under the VA Policies and Procedures" were violated in the discharge and subsequent administrative review process. *Id.* at 1-4. As a remedy, Plaintiff seeks injunctive relief – specifically, an order reinstating his employment. *See id.* at 4, 21.[1] Because Plaintiff named the VA and various VA employees in their official capacities, all

---

[1] Although Plaintiff mentions "back pay," Amend. Compl. at 21, he is elsewhere adamant that he is not seeking monetary damages. *See id.* at 14, 16 (stating the only relief available to Plaintiff is

the claims are essentially against the United States. *See Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) ("When an action is one against named individual defendants, but the acts complained of consist of actions taken by defendants in their official capacity as agents of the United States, the action is in fact one against the United States.").

## II.   Analysis

Relevant here, Defendants seek dismissal based on sovereign immunity and the Court's subsequent lack of subject matter jurisdiction. *See* Defs.' Mot. at 13-22. The Court agrees it lacks jurisdiction and GRANTS dismissal without prejudice.[2]

### A.   Standard of Review

"Motions to dismiss for lack of subject matter jurisdiction 'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" *City of Albuquerque v. U.S. Dept. of the Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). Here, Defendants' motion to dismiss presents a facial attack on the sufficiency of Plaintiff's Amended Complaint. So, the Court confines its review to the pleadings and accepts as true the allegations in the Amended Complaint. *See Peterson v. Martinez*, 707 F.3d 1197, 1205-06 (10th Cir. 2013).

---

injunctive relief); *see also* Pl.'s Resp. at 14 ("Dr. Tompkins is not seeking money damages. Instead, he is seeking injunctive relief to restore him to a position he has unquestionably performed with distinction in providing excellent care to veterans.").

[2] Because the Court agrees it lacks subject matter jurisdiction, it does not address Defendants' alternative arguments for dismissal.

2

### B.   Analysis

#### 1.   Sovereign Immunity

"[T]he United States, which is a defendant here, is immune from suit unless it expressly and unequivocally waives its sovereign immunity." *Kansas by & through Kansas Dep't for Children & Families v. SourceAmerica*, 874 F.3d 1226, 1240 (10th Cir. 2017). The APA contains a limited sovereign immunity waiver, as "it permits 'a person suffering legal wrong because of agency action' to 'seek relief other than money damages' in federal court." *Id.* (citing 5 U.S.C. § 702 (internal brackets omitted)). However, the "APA's waiver of sovereign immunity is 'limited because it does not confer authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Id.* (citation and internal brackets and quotation marks omitted).

#### 2.   Plaintiff's Lack of a Judicial Review Remedy

Title 38 of the United States Code governs veterans' benefits and it was under this framework that Plaintiff was employed. *See* 38 U.S.C. § 7401(1) (granting the VA Secretary authorization to appoint physicians); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1067 (9th Cir. 2008) ("Title 38 of the United States Code governs the appointment and employment terms of VA physicians[.]"). The question here is whether Title 38, in relevant part, expressly or impliedly forbids this Court from granting Plaintiff judicial review, thus negating the APA's waiver of sovereign immunity. The Court finds it does.

When a 38 U.S.C. § 7401(1) employee is terminated (or other adverse employment action is taken) the employee shall have the right to appeal the action. *See id.* § 7461(a). "If the case involves or includes a question of professional conduct or competence in which a major adverse action was taken, such an appeal shall be made to a Disciplinary Appeals Board . . . ." *Id.* §

3

7461(b)(1).  Professional conduct or competence involves either "[d]irect patient care" or "[c]linical competence."  *Id.* § 7461(c)(3)(A-B).  Thereafter, "[a] section 7401(1) employee adversely affected by a final order or decision of a Disciplinary Appeals Board (as reviewed by the Secretary) may obtain judicial review of the order or decision."  *Id.* § 7462(f)(1).  However, where the termination or adverse action "does not arise out of a question of professional conduct or competence," the "Disciplinary Appeals Board shall not have jurisdiction to review such matters . . . ." *Id.* § 7463(1).

Here, assuming the truth of Plaintiff's allegations, his termination was based on administrative deficiencies which, by statutory definition, do not involve professional conduct or competence. *See* Amend. Compl. at 4-6; *see also* 38 U.S.C. § 7461(c)(3)(A-B). So, while Plaintiff had a process to appeal his termination, *see id.* § 7463(d), he did not have the right to appeal to the Disciplinary Appeals Board. *See id.* § 7463(1).

The Court finds no Tenth Circuit authority precisely deciding whether a VA physician who lacks access to a Disciplinary Appeals Board decision under 38 U.S.C. § 7463 is denied the opportunity for judicial review.  However, other circuits have so concluded.  *See Bonner v. Dep't of Veterans Affairs Pittsburgh Healthcare Sys.*, 477 F.3d 1343, 1345 (Fed. Cir. 2007) (addressing plaintiff's right to judicial review under other Title 38 sections but noting: "Significantly, under the Department grievance procedures of § 7463, an employee cannot obtain review by a Disciplinary Appeals Board . . ., nor can he obtain judicial review of the Department's final decision."); *Fligiel v. Samson*, 440 F.3d 747, 752 (6th Cir. 2006) (holding that 38 U.S.C. § 7463 did not provide a provision for judicial review); *see also, e.g., Weber*, 521 F.3d at 1067 (holding a VA physician could not seek judicial review because "[Title 38] does not provide for judicial review of the decisions of summary review boards for probationary employees").  And, without

4

authorization for judicial review, Plaintiff cannot assert claims under the APA to avoid the United States' sovereign immunity.

For example, in *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court was asked to decide "whether a nonveteran member of the excepted service may obtain, under the Tucker Act, judicial review of adverse personnel action for which the [Civil Service Reform Act (CSRA)] does not provide him a right of review." *Id.* at 443. In reaching its decision, the court first reviewed the relevant CRSA language and held that Congress' decision to exclude "nonpreference members of the excepted service from the definitional sections of Chapter 75" "displays a clear congressional intent to deny the excluded employees the protections of Chapter 75 – including judicial review – for personnel action covered by that chapter." *Id.* at 447-48 (*superseded by statute as recognized in Bosco v. United States*, 931 F.2d 879, 883 n. 3 (Fed. Cir. 1991) ("Since *Fausto* was decided, the CSRA has been amended to provide review for nonpreference eligible members of the excepted service.")). Having found plaintiff had no right to judicial review under the CRSA, the court held he could not circumvent Congress' intent by seeking judicial review under another statute, namely the Tucker Act. *See id.* at 455. This reasoning has been applied to claims arising under the APA. *See, generally, Kansas ex rel. Schmidt v. Zinke*, 861 F.3d 1024, 1028 (10th Cir. 2017) (affirming the district court's dismissal of plaintiff's APA claims, based on a lack of subject matter jurisdiction, after finding agency letter did not constitute final decision and therefore plaintiffs lacked any judicial review); *see also Fligiel*, 440 F.3d at 752 (citing *Fausto* and holding that because 38 U.S.C. § 7463 – in contrast to § 7462 – did not provide a provision for judicial review "we find that Fligiel is precluded from invoking the protections of the APA to obtain the judicial review of her adverse employment action"); *Weber*, 521 F.3d at 1067 ("[u]nder *Fausto*, where a comprehensive remedial scheme exists to address

5

agency adverse actions, and Congress has clearly indicated that no judicial review is available, an individual may not choose other federal statutory avenues to obtain review"); *Pathak v. Dep't of Veterans Affairs*, 274 F.3d 28, 32 (1st Cir. 2001) (finding that because the relevant statutory scheme "does not provide Pathak with a right to judicial review, the logic of *Fausto* dictates that he cannot go around [the statute] and assert federal jurisdiction by relying upon the [APA]"); *Kunk v. Salazar*, No. 07CV01617PABMJW, 2009 WL 3052292, at *4 (D. Colo. Sept. 22, 2009) (finding the court lacked subject matter jurisdiction because the relevant statutory authority did not permit judicial review).

The underlying reasoning in *Fausto* and the weight of authority above are persuasive.[3] Accordingly, because Congress did not grant Plaintiff the right to a Disciplinary Appeals Board decision under 38 U.S.C. § 7463, which is the trigger for judicial review, the Court finds the APA's sovereign immunity waiver does not apply and it therefore lacks subject matter jurisdiction over Plaintiff's constitutional and policy-related due process claims arising under the APA.

**III.    Conclusion**

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's Amended Complaint with Brief in Support [Doc. No. 28] is GRANTED and Plaintiff's claims are DISMISSED without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A

---

[3] Plaintiff seeks to distinguish several of these cases. First, Plaintiff suggests *Fausto* was incorrectly decided and is inapplicable because it analyzed the CSRA, which Plaintiff argues is a much more comprehensive framework than the relevant portions of Title 38 of the United States Code. *See* Pl.'s Resp. at 18-19. But *Fausto* has not been overruled. Instead, later statutory amendment superseded its direct holding. *See supra* at 5. Moreover, several of the cases cited herein have applied the *Fausto* reasoning in employment cases arising under Title 38. *See id.* at 5-6. Plaintiff also attempts to distinguish both *Pathak* and *Fligiel*, claiming that in *Pathak* the plaintiff had only been suspended for days (in contrast to Plaintiff's termination) and the plaintiff in *Fligiel* sought money damages (in contrast to Plaintiff's request for injunctive relief). *See* Pl.'s Resp. at 20, 24. However, neither *Pathak* nor *Fligiel* turned on those points and the Court finds them persuasive despite Plaintiff's argument to the contrary.

6

41

longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice."). Still pending is Defendants' dispositive motion addressing Plaintiff's original Complaint. [Doc. No. 18]. That motion became moot when Plaintiff filed the Amended Complaint and it is DENIED as such.

A separate judgment shall be entered.

IT IS SO ORDERED this 3rd day of April, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE

7

42

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

JOHN TOMPKINS, M.D.,                )
                                    )
            Plaintiff,              )
                                    )
v.                                  )       Case No. CIV-18-1251-J
                                    )
UNITED STATES DEPARTMENT OF         )
VETERANS AFFAIRS, et al.,           )
                                    )
            Defendants.             )

## JUDGMENT

Pursuant to the Order filed separately this same date, Defendants' motion to dismiss [Doc. No. 28] is GRANTED and Plaintiff's claims are DISMISSED without prejudice. As such, Judgment is granted against Plaintiff and in favor of Defendants.

ENTERED this 3rd day of April, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE